Good morning, Your Honor. May it please the Court, my name is H. Glenn Vogel, Jr. and I represent the petitioner in this case, Olivia Tomay-Hart. This Court has long held from, I think, one of the first immigration cases that I remember, a positive immigration case from this Court, Bull v. INS, that in exercising discretion, that the Board of Immigration Appeals cannot base their decision upon an incorrect legal conclusion or, in other words, their discretion not to exercise their discretion cannot be based on an incorrect legal conclusion. Secondly, the Bull case also held that the fact that a visa petition is not yet approved in and of itself is not a basis to deny an exercise of discretion. That is what occurred here in this case. The Board of Immigration Appeals denied a motion to remand, which is an exercise of discretion. They declined to send the case back to the immigration judge when there was a visa petition because they said a visa petition was not immediately available, or an immigrant visa was not immediately available. In fact, an immigrant visa was immediately available because the petitioner was the petitioner, meaning the person who filed the I-130, was, in fact, the petitioner's son. The visa is not immediately available in the sense that it hasn't been issued or put on the table. It's pending, right? Right. Well, the actual application is pending, but there was a visa immediately available because when a child over 21 petitions for their parent, there's no way. It's an immediate relative. So there's a second set of categories. There's no numerical limitation, is that what you're saying? Correct. It's not subject to the numerical limitations of the categories where, for instance, if it's a parent petitioning for a U.S. citizen, parent petitioning for a child over 21, there's a numerical limitation. Immediate relatives aren't subject to that because this was her son, and she was an immediate relative, and approval of the petition would have been... So in your view, then, the only limitation is the standard of meritorious, not frivolous, and timely, is that right? Correct. So the government's brief cites 8 U.S.C. 1255, small letter I, number 2, sub B, which does say flatly on its face, the Attorney General may adjust the status of an alien if an immigrant visa is immediately available to the alien at this time. And so you're saying that doesn't mean that it's been determined yet. It just means that it meets that threefold standard? Is that the... That's correct, and that's what the Court said in Bull, the same situation. In Bull v. INS, there was an unapproved I-130 petition by the petitioner's wife. Okay, but Bull did not involve this kind of timing issue where the current petition would be untimely unless it's grandfathered, right? That's correct, but that's an issue for the immigration judge on the application, once the application is sent back to determine. And so, wait, so your point would be, if all of this had actually been fleshed out by the immigration judge, rather than just saying, we're not going to, we're going to deny the then that might have been okay, but the problem here is the one that's in Bull because the immigration judge did not actually set forth any reasoning. Instead, the immigration judge said the fact that the petition for an immigrant visa had not yet been approved at the time, I'm sorry, that that was the problem, that that was, the fact that it had not yet been approved was the reason for the denial in and of itself. And that was all they said. They didn't say anything else. They didn't say anything else about that she wasn't eligible for adjustment of status. They didn't even go into that because that's why they needed to send it back to the immigration judge to make an initial determination on the application for adjustment of status because this case, that wasn't before the immigration judge in the first place. It was a different, it was a different application. It was a cancellation of removal application. We're not, we're not talking about that here. We're just talking about the narrow reason why the board said, we're not sending this back because the visa petition hasn't been approved and therefore a visa is not immediately available. Whenever I have an immigration expert here, I like to consult, so, you know, Bull says what it says and that's our binding precedent. But I was just wondering, has anything in the law that governs these motions to reopen or you call it a motion to remand, has anything about that changed in a way that would undermine Bull to your knowledge? No. Not at all. And the, and what you have to look at in the, the standard for review here is an abuse of discretion. And it's the same thing for, for whether it's, I mean, it was the same thing in Bull was reviewing what's an abuse of discretion. And every court that I know says it's an abuse of discretion if the BIA uses an incorrect legal standard or makes a mistake, makes a legal mistake in denying, as their basis for denying an exercise of discretion. And that's what happened here. And I know I'm going to respond to whatever the government, if the court has any other questions, I'm happy to. You've saved, I believe, six minutes for rebuttal. So we'll hear from you again.  I'll, I'll. Well, I just wanted to, to make sure that I understand this, this grandfathering business because as I understand it, the petition now standing alone would not be timely. So the previous petition was filed on the last day that it was permissible. And then it was ultimately withdrawn. That is, the government's brief says that it was denied on the basis the marriage wasn't bona fide. But I didn't read it that way. Am I right that that petition, the earlier one, was, was simply withdrawn? I am, I'm, I think there is a denial on it, but that's not really the issue. It's not a timeliness issue. It's, it's, it's the ability for, for one to adjust their status. Now, so this grandfathering thing, there had to have been a petition, a meritorious petition filed. And, and our position is that, that the immigration judge needs to make a decision on that because the immigration judge didn't in fact make a decision on that. And that's a, and that's something that needs to go back to the court for the first instance in the first place, which is exactly the same thing that happened in Bull. I'll, I'll, I'll draw the analogy. In Bull, he had committed a crime, which made him ineligible for adjustment of status, but, but there was a waiver available. So again, the case had to go back to the immigration judge to, to, to make an initial determination on whether, you know, on whether he was actually eligible for adjustment of status. And that hasn't happened here. And the cases that are, that the, the government's going to rely on, and I'll, I'll address those, in, in, in all of those cases, there was an initial determination by the immigration judge that the person wasn't, wasn't grandfathered, or that, or that there wasn't a, an approvable petition when filed. Right. Thank you. All right. Thank you. Good morning. Good morning. And may it please the Court, Your Honor, Sam Randnitz on behalf of the United States Attorney  In this immigration case, Petitioner challenged the decision of the Board of Immigration Appeals, which denied her motion to remand based on a new visa petition filed by her adult son in January 2018. But the Board denied a visa's broad discretion in denying this motion to remand. As Petitioner concedes, the issue at heart, really, is whether or not the marriage-based petition filed on her behalf prior to the sunset date, or on the sunset date of April 30, 2001, was based on a bona fide marriage from its inception, based on the circumstance of the time, because only a bona fide marriage visa petition can serve to grandfather someone. However, UCIS found on the merits, after adjudicating this visa petition, throughout visa proceedings that lasted from October 2004 to 2009, that they failed to show a bona fide marriage. After looking at evidence, after notice of intent to deny, after interviews, it's adjudicated on the merits and denied for lack of bona fide marriage. Let me ask you whether I'm just confused about this. Is it, are you referring, is there a distinction between the I-130 and the I-485? That is, I certainly understood that the I-130 was simply withdrawing. Am I wrong? That, I would say, is incorrect. There was a denial in the record from 2009, where UCS issued a decision to Mr. Nigel Hart, as Petitioner also agreed, it was denied on the merits, finding no bona fide marriage. And this was after, as I mentioned. Is that document or that opinion in the record, or is that findable? It is. If it's actually cited, that would sure help me, because it may be our fault. It's found. Can you, can I get you to step to the microphone, because we record these things. That's page 287 of the record. Okay. All right. Go ahead, then. So, it was denied on the merits after full and fair visa proceedings. And so, as the Board suggested, after you have adjudication on the merits, where it's been found not to be valid from the inception, that cannot be used to grandfather a later-based visa petition. And that was a citation to matter of but that the government submitted, because the grandfathering provision is more for someone who is to preserve their priority date on April 30th, 2001, but for some reason later on, there's been a breakdown in the relationship. But there was a bona fide marriage from its inception. And so, you don't get a second chance to prove the bona fide of that marriage after an initial adjudication on the merits. And I go through examples in that case, the first being a bona fide marriage that broke down because of a divorce, or a labor petition that was based on a business that was providing a job at the time that later goes out of business. So these are valid from the inception. However, later on, due to circumstances outside the petitioner's control, they break down. So, the grandfathering provision preserves that status for those types of individuals, but there's no indication, at least the Board suggested, that this should not be used when someone has had a full adjudication on the merits showing no bona fide marriage. But even moving beyond that, and you accept the petitioner's position that you can, in subsequent proceedings, removal proceedings here, go back and rehabilitate this prior finding of no bona fide marriage, she certainly hasn't met that standard here. With her motion to remand, she submitted one piece of evidence in addition to her testimony. That was the letter from her ex-husband, Nigel Hart. And Nigel Hart claims that this was a bona fide marriage, he's still in love with his ex-wife, and that he'd marry her all over again. But this does not go to explaining any of the inconsistencies previously found by the former INS and now UCIS in denying the visa petition for lack of bona fide marriage. So for example, what started the ball rolling for the UCIS, this not being a bona fide marriage, was questions about the paternity of a child that was born during the marriage. So Nigel Hart and Tisha had been married for about a year, and then a child was born during the marriage, Hersoff, and they submitted a birth certificate for Hersoff that did not list him as the father, and where she hyphenated her name as Tomei Hart, didn't even hyphenate the child's name, had no record of him on the birth certificate. And when Hersoff showed up for the interview, when he was approximately two years old, he did not know who Mr. Hart was. So the UCIS ordered a paternity test, and the paternity test excluded Mr. Hart as the father. And after that, that started this ball rolling on no bona fide marriage, but also the agency also found there was really no evidence of a shared life together. So even after three years of marriage, they submitted hardly anything showing that they lived together, and petitioner in her testimony before the immigration judge claimed they lived together up until 2010, approximately, when they got divorced. And so you'd expect, if she's going to rehabilitate this bona fide marriage, throughout that long period, about eight years of marriage, there'd be more documentation of a shared life together. But instead, you just have a letter from him saying the marriage is bona fide. But since, I mean, since the motion to reopen or remand was denied, the decision wasn't really made on that. I mean, they didn't make the grandfathering decision. What they said was the immigration visa is not immediately available to her since the visa petition filed by her son remains pending. Right? That's correct. I mean, that's the, and that conflicts with Bull, with our precedent. I mean, I'll ask you the same thing I ask your brother. I mean, is there any development in the law on reopening these cases that has undermined Bull? Well, I would say Bull is still the law. However, I would also point the panel towards Las Parias, which was a case set by the government in our brief, where they were faced with a similar predicament where the board did not fully explain its reasoning. It, again, was someone who... Or I guess they would say they did fully explain their reason because they said, you know, this is not immediately available. I think the board is ultimately correct in saying this pending visa petition is not likely to change the outcome of proceedings because under Bull, you have to prove not only a meritorious visa petition filed on your behalf, but also a substantial case for adjustment of status. But again, they didn't make that decision because they didn't consider the new evidence. Right? They don't specifically state that now. Yeah. However, as we've discussed about this grand filing provision, it's fairly clear that she cannot be eligible for adjustment of status based on this prior marriage-based petition that was denied. And I think that would be fine if that's what they said. But the problem is we can't really review it. We don't know what the... We can't tell what the basis for the decision was. So, why shouldn't we send it back and say, tell us what you're thinking on this was? The government acknowledges that and that... So, going back to this Las Perea decision, which is a First Circuit decision, where they... What's the name? Las Perilla or Las Perea versus Ashcroft. L-A-S-P-R-I-L-L-A? Correct. I believe it's on page 15 of the government's brief, perhaps. But they are faced with a similar predicament where someone's trying to re-appeal a data visa and the board doesn't simply say that you're not a beneficiary visa without further explanation. The government made arguments, as we did here, explaining what the board... why they reached this conclusion. And the First Circuit notes that, in another context, this might be prohibited by chantering. However, because it's a motion to reopen under the abuse of discretion standard, which is a much broader standard where the board is entirely within its discretion to grant or deny the motion where the decision has to be arbitrary and capricious, they entertained the government's arguments in that case. And they found it did support the board's decision that it was not likely to change the outcome proceedings. It occurs to me that your heart might not be fully in the idea that Court of Appeals judges can make up their own reasons for why the Board of Immigration Appeals did what they did. Perhaps. But I think in this case it's just... you also look at the filings before the board. Petitioner has not cited matter re-error, not cited matter, but it's just simply stated I'm grandfathered. There was never much argument made to the board. It simply is just a... and it still isn't. It's just a bald assertion that she can grandfather off this previously denied visa. It's never been explained. And so when the board's faced with that, it simply states, you've shown nothing that would change the outcome proceedings in this case. I understand. Unless the panel has further questions. Do you have any further questions? No, thank you very much. All right. Just to respond to... on a couple of points. The first thing, the Board of Immigration Appeals, and you talk about the re-error case, and all the cases that the government cites, they all say... they all say this, one of the same thing, that the mere denial of a visa petition... and this is a quote from the re-error, actually. The mere denial of a visa petition, although significant, is not determinative of whether a visa petition was meritorious, in fact. And the government wants to try to cloud this and throw this situation to say, oh, well, there was a denial of the visa petition, you know, back in the original visa petition. But that's not the issue. And that's not determinative of whether the marriage was meritorious in the first place. But, again, to get back, that's not even what the board said. The board said, as the courts noted and asked the government, the board said very clearly, and this is a quote from the board, the respondent has not shown that she's eligible for adjustment of status because there is no indication that an immigrant visa is immediately available to her since her visa petition filed by her son remains pending. And that's all they said. And that's clearly wrong. It's clearly against Bull. That's wrong. If the court said that it's wrong because immediately available doesn't mean one is in hand. Correct. Correct. And it's not subject to the numerical limitations. Not immediately available would mean there was a two- or three-year wait or it was in a backlog of the numerical visa petitions. And that's not the case here. It was a clear mistake, legal mistake by the board, which needs to get sent back. But, again, in all these other cases where the government tries to cite, well, there was a denied visa petition by USCIS or immigration, which is the immigration, you know, which adjudicates these, you have a right to renewal of your adjustment of status application in front of an immigration judge. So any decision by USCIS is always going to be reviewable or you have the right to renew your application for adjustment of status in front of an immigration judge. And then an immigration judge makes a new determination as to whether this person was, in this case, whether a person was grandfathered or not. In those cases, in the cases that they cite, that had already been done. And that's the distinction here. When you say was grandfathered or not, is that a timing question or is that the, quote, grandfathering depends on this meritorious when filed? Well, there's a couple of things. It has to have been filed by April. This one was filed. I understand that. Yeah. It has to have been filed by April 30, 2001. That's the last date. That was the date of the sunset of the 245i relief. That's clearly, you know, that was clearly the case here. Then it has to have been meritorious. So, you know, I can talk about what the immigration judge. There's some interesting facts. That's the decision where you say that an immigration judge should decide focused on that question, not on the question of immediate availability. Right. Absolutely. But, again, this is a new petition. This was a new case that something, you know, her son turned, the petitioner's son turned 21 while this case was, you know, was pending on appeal or it was administratively closed and then it was administratively reopened. And at that time, he'd already, the son was 21 and had filed a petition for his, you know, for his mother, which is clearly a new evidence and needs to be considered. And that's, you know, I think that's what, you know, that's what this Court has always said since 1986 in Bull. It's clear that the person should be given the chance or an opportunity and discretion should not be denied based on an incorrect legal standard or an incorrect legal interpretation or incorrect facts here. And thank you very much for the opportunity to present my argument. All right. We appreciate you coming. That concludes our session for the day. And the Court is in recess until 9 o'clock tomorrow morning. Thank you. Thank you.